CV 12 4728

NO SUMMONS ISSUED

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 21 2012 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>HOWARD BRETT BERGER,<br><br>Defendant, and<br><br>MICHELLE BERGER,<br><br>Relief Defendant. | Civil Action No.<br><br>WEXLER, J.<br><br>LINDSAY, M.J. |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Securities and Exchange Commission alleges as follows:

**SUMMARY**

1. Beginning no later than July 2008 and continuing through approximately early March 2010, Defendant Howard Brett Berger engaged in a fraudulent trade allocation scheme commonly referred to as "cherry picking." Berger utilized a direct-access trading platform to delay final allocation of the trades until the end of the trading day, frequently after the market close, so he could determine whether the trades were profitable. Berger then oftentimes cherry picked profitable trades from Professional Traders Fund, LLC ("PTF"), one of two hedge funds he managed, and allocated the trades to his wife's brokerage account. In addition, Berger oftentimes allocated unprofitable trades to PTF and another hedge fund he managed, Professional Offshore Opportunity Fund ("POOF") (collectively, the "Funds").

2. Berger reaped substantial gains from his fraudulent cherry picking scheme by receiving at least $6.8 million in profits and avoiding losses in his wife's account. Berger also

created tremendous losses to investors by passing on millions of dollars in losses to the Funds he managed.

3. Through his misconduct, Berger violated Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, of the Securities Exchange Act of 1934 ("Exchange Act"), and Sections 206(1), 206(2), and 206(4), 15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4), and Rule 206(4)-8, 17 C.F.R. § 275.206(4)-8, of the Investment Advisers Act of 1940 ("Advisers Act"). Unless permanently enjoined, Berger is reasonably likely to engage in future violations of the federal securities laws.

**THE DEFENDANT**

4. Berger, 41, is a resident of Syosset, New York. He is the co-founder and co-manager of Professional Traders Management, LLC and Professional Offshore Traders Management, LLC (collectively "Professional Traders Investment Advisers"), which managed and acted as the investment advisers for the Funds. In 2006, the Financial Industry Regulatory Authority ("FINRA") barred Berger from association with any FINRA member firm.

**RELIEF DEFENDANT**

5. Relief Defendant Michelle Berger, 40, is a resident of Syosset, New York. Michelle Berger is married to Defendant Berger and is not employed. She is named solely as a Relief Defendant. As a Relief Defendant, she is not alleged to have participated in the underlying fraudulent scheme; instead, Michelle Berger held title to the accounts where the proceeds from the cherry-picking scheme were deposited and the remaining proceeds from the cherry picking scheme are presently held.

## RELATED ENTITY

6. Meeting Street Brokerage, LLC ("Meeting Street") was a broker-dealer located in Palm City, Florida. Meeting Street was registered with the Commission from August 1993 until December 2009, when it was expelled from membership with FINRA in connection with a settled FINRA action involving allegations of market manipulation.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e) and 78aa; and Section 214 of the Advisers Act, 15 U.S.C. § 80b-14.

8. This Court has personal jurisdiction over Berger and venue is proper in the Eastern District of New York because the Defendant's acts and transactions constituting the violations of the Exchange Act and the Advisers Act occurred in the Eastern District of New York. Berger and the Funds and their investment advisers maintained their principal offices in the Eastern District of New York. In addition, Berger and his wife reside in the Eastern District of New York.

9. Berger, directly and indirectly, has made use of the means and instruments of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

## FACTUAL ALLEGATIONS

### A. The Hedge Funds

10. Berger and a partner formed Professional Traders Management and PTF in 2001. Later, in approximately 2005, they formed Professional Offshore Traders Management and

POOF. Defendant Berger effectively controlled Professional Traders Investment Advisers, which served as investment advisers for PTF and POOF. The Funds primarily employed an investment strategy involving providing private financing capital for small to mid-sized publicly-traded companies commonly referred to as private investment in public equity or "PIPE" transactions.

11. Beginning in approximately 2005, Defendant Berger maintained the Funds' brokerage accounts at Meeting Street and directed the trading in the Funds' brokerage accounts.

**B. The Fraudulent Cherry-Picking Scheme**

12. In July 2008, Berger opened a brokerage account in his wife's name, Michelle Berger, at Meeting Street. Berger gave himself authorization to trade in his wife's account and he began to heavily engage in highly active, short-term stock trading known as "day trading."

13. The trading platform Meeting Street used allowed Defendant Berger to have direct access to all market exchanges. Throughout the days, Defendant Berger began his trading by placing buy orders in PTF's' "allocation" or "suspension" account where trades originated and were held before Berger decided how to allocate them. These trades went directly to the exchanges where the trades were executed, and they remained in PTF's allocation account until Berger determined their final allocation.

14. Berger closed out most of the profitable trades before the markets closed, that is, he sold those securities that increased in value during the day. In allocating his trades, Berger perpetrated his scheme by placing most of the profitable trades from the PTF account into his wife's brokerage account. In addition, Berger generally allocated most of the unprofitable trades into the POOF account, and left many of the unprofitable trades in PTF's account.

15. At the end of the day, after making all of his trades, Berger uploaded his formatted trading blotters through his broker-dealer and they were sent to the broker-dealer's clearing firm automatically through the trading platform's software. Berger could change the allocation of a trade at any time prior to uploading his trade data to the clearing firm, which could be done as late as approximately 7:30 p.m. EST. The trading platform's daily activity logs reflect hundreds of instances where Berger executed profitable trades in PTF's account, and to a lesser extent, in POOF's account, and subsequently allocated those trades to his wife's account.

16. From approximately July 2008 through approximately December 2009, Defendant Berger engaged in this fraudulent activity on an almost daily basis. In December 2009, once FINRA had expelled Meeting Street, Berger moved the Funds and Michelle Berger's brokerage accounts to another broker-dealer and continued the cherry-picking scheme for several more months.

17. Berger and his wife's account reaped substantial gains from his fraudulent scheme. They received at least $6.8 million in profits and avoided losses in his wife's account. Berger's fraud also created huge losses to investors in the Funds by passing on millions in losses to the Funds.

## CLAIMS FOR RELIEF

### COUNT I – FRAUD

### Violations of Section 10(b) and Rule 10b-5 of the Exchange Act

18. The Commission repeats and realleges paragraphs 1 through 17 of this Complaint.

19. From no later than July 2008 through approximately early March 2010, Berger, directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of securities, knowingly, willfully or recklessly:

(a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices and courses of business which have operated, and may continue to operate as a fraud upon the purchasers of such securities.

20. By reason of the foregoing, Berger, directly and indirectly, violated and, unless enjoined, may continue to violate Section 10(b) and Rule 10b-5 of the Exchange Act, 15 U.S.C. § 78j(b) & 17 C.F.R. § 240.10b-5.

**COUNT II – FRAUD BY INVESTMENT ADVISER**

**Violations of Sections 206(1) and 206(2) of the Advisers Act**

21. The Commission repeats and realleges paragraphs 1 through 17 of this Complaint.

22. At all times alleged in the Complaint, Berger acted as an investment adviser to the Funds through the Professional Traders Investment Advisers.

23. From no later than July 2008 through approximately early March 2010, Berger, while acting as an investment adviser, by use of the mails, or the means and instrumentality of interstate commerce, directly or indirectly, knowingly, willfully or recklessly: (a) employed devices, schemes or artifices to defraud his clients or prospective clients; or (b) engaged in transactions, practices and courses of business which have operated as a fraud or deceit upon his clients or prospective clients.

24. By reason of the foregoing, Berger, directly and indirectly, violated, and unless enjoined may continue to violate, Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and (2).

**COUNT III – FRAUD BY INVESTMENT ADVISER**

**Violations of Section 206(4) and Rule 206(4)-8 of the Advisers Act**

25. The Commission repeats and realleges Paragraphs 1 through 17 of this Complaint.

26. At all times alleged in the Complaint, Berger acted as an investment adviser to the Funds through Professional Traders Investment Advisers.

27. Beginning no later than July 2008 through approximately early March 2010, Berger, while acting as an investment adviser, by the use of the mails, and the means and instrumentalities of interstate commerce, directly and indirectly, engaged in acts, practices or courses of business which were fraudulent, deceptive, or manipulative. Berger made untrue statements of a material fact or omitted to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to any investor or prospective investor in the pooled investment vehicle, and otherwise engaged in acts, practices or courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in the pooled investment vehicle.

28. By engaging in the conduct described above, Berger, directly and indirectly, violated, and unless enjoined may continue to violate Section 206(4) and Rule 206(4)-8 of the Advisers Act, 15 U.S.C. § 80b-6(4) & 17 C.F.R. § 275.206(4)-8.

**RELIEF REQUESTED**

WHEREFORE, the Commission respectfully requests that the Court:

**A. Permanent Injunctive Relief**

Issue a permanent injunction, restraining and enjoining Berger, his officers, agents, servants, employees, attorneys, and all persons in active concert or participation with him, and each of them, from violating: (i) Section 10(b) and Rule 10b-5 of the Exchange Act, 15 U.S.C. §

78j(b) & 17 C.F.R. § 240.10b-5; (ii) Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) & 80b-6(2); and (iii) Section 206(4) and Rule 206(4)-8 of the Advisers Act, 15 U.S.C. § 80b-6(4) & 17 C.F.R. § 275.206(4)-8.

**B. Disgorgement**

Issue an Order holding Berger and Michelle Berger jointly and severally liable to pay disgorgement of $5,399,456.16. In addition, the Court should issue an Order holding Berger liable and requires him to pay an additional $1,433,521.84 of disgorgement and $22,776.59 in prejudgment interest.

**C. Escrow of Funds**

Pursuant to the Court's equitable authority, issue an Order disbursing the proceeds of the Michelle Berger escrow account established as part of the resolution of this matter to the Fair Fund described in paragraph E., below.

**D. Civil Penalty**

Issue an Order requiring Berger to pay a civil money penalty in the amount of $50,000 pursuant to Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d)(3), and Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9 to be disbursed to the Fair Fund described in paragraph E, below..

**E. Fair Fund**

Issue an Order establishing a Fair Fund for the redistribution of all disgorgement, prejudgment interest and any penalty collected in this matter for the benefit of the defrauded investors as authorized by the "fair funds" provision of the Sarbanes-Oxley Act of 2002.

**F. Further Relief**

Grant such other and further relief as may be necessary and appropriate.

**G. Retention of Jurisdiction**

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

September 21, 2012

By: /s/ Ian A

C. Ian Anderson
Senior Trial Counsel
New York Reg. No. 2693067
Direct Dial: (305) 982-6317
E-mail: andersonci@sec.gov

Christopher E. Martin
Senior Trial Counsel
Arizona Bar No. 018486
Direct Dial: (305) 982-6386
E-mail: martinc@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4146